IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DEBORAH JOHNSON** <br> *Plaintiff* | § § § § | |
| VS. | § § § § § | CIVIL ACTION NO: 2:23-cv-332 |
| **NUECES COUNTY, TEXAS** <br> and **FELIPE MARTINEZ** <br> *Defendant* | § § § § § § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **DEBORAH JOHNSON**, referred to herein as Plaintiff, complaining of Defendants **NUECES COUNTY, TEXAS** ("County") and **FELIPE MARTINEZ** ("Deputy Martinez") in his individual capacity, and for cause of action, would respectfully show unto the Court and jury the following:

### I. NATURE OF THE CASE

**THE CLAIM:** Nueces County Constable, Precinct 1 Deputy Constable FELIPE MARTINEZ used excessive force against DEBORAH JOHNSON in violation of her individual rights under the Fourth Amendment to the United States Constitution when he violently slammed Mrs. Johnson against the bed of her pickup truck incident to a minor traffic misunderstanding which took place in the pickup line of her granddaughter's school on 17 December 2021. Defendant was, on information and belief, working "off duty," running traffic for the school. The incident escalated unnecessarily and immediately once Defendant Martinez snatched Mrs. Johnson's planner from her hands as she attempted to write down his information for the purpose of making a complaint regarding his attitude and conduct. During this interaction, Deputy Martinez used very aggressive

1

language, berating and demeaning Mrs. Johnson, who felt compelled to call 911 due to Defendant Martinez's conduct.

Prior to this encounter, in 2018, Deputy Martinez and other officers arrested a man, J.G. for public intoxication, *in front of his apartment complex.* Deputy Martinez and the others transported J.G. to the RTA bus station on Leopard St., where Deputy Martinez proceeded to antagonize J.G., alleging that J.G. was kicking him, which is clearly controverted by the body camera footage. Deputy Martinez ultimately tased J.G. for no reason. The Nueces County District Attorney's Office dismissed the pending Assault on a Public Servant case against J.G., on information and belief, in May 2022. Nueces County Constable, Precinct 1, was aware of Defendant Martinez's propensity to use excessive force in his encounter with unarmed subjects, yet failed to train him accordingly or otherwise put in place mechanisms to prevent his further unjustified use of excessive force.

Mrs. Johnson's injuries resulted directed and only from this clearly excessive use of force; and the excessiveness of that force was clearly unreasonable.

## II.     PARTIES

1. Plaintiff **DEBORAH JOHNSON** is a resident of NUECES COUNTY, TEXAS.
2. Defendant Nueces County, Texas is a political subdivision of the State of Texas and the **Nueces County Constable, Precinct 1** is an agency operated thereunder.
3. The Nueces County Constable, Precinct 1 is funded and operated by the Nueces County Commissioners Court. Connie Scott is the County Judge and chief elected officer of Nueces County, Texas. County Commissioners Robert Hernandez, Joe A. Gonzalez, John Marez, and Brent Chesney comprise the Commissioners Court of Nueces County, the County's legislative and governing body.
4. County Judge Connie Scott and the Commissioners Court are responsible for implementing the policies and decisions of the Commissioners Court of Nueces County as the County's primary administrators.
5. County Judge Scott and the Commissioners Court are tasked with appropriating, reviewing, and implementing the Nueces County Constable, Precinct 1's budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Robert M. Cisneros is the Constable, Precinct 1 of Nueces County and the primary policy-maker tasked with creating, implementing, and reviewing the Nueces County Constable, Precinct 1's policies, procedures, practices, and customs.
7. Nueces County, Texas may be served a copy of this lawsuit by and through County Judge Connie Scott, 901 Leopard St., Rm. 303, Corpus Christi, TX 78401.
8. Defendant **FELIPE MARTINEZ** is a deputy constable employed by the Nueces County Constable, Precinct 1 and at all times material herein was a police officer acting in the course and scope of his employment for the Nueces County Constable, Precinct 1. He may be served at 901 Leopard St., Rm. 112, Corpus Christi, TX 78401, or wherever he may be found. Defendant Martinez is being sued in his individual capacity.

### III. JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.
10. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.
11. Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in the City of Corpus Christi, Nueces County, TX, which is in the Corpus Christi Division of the Southern District of Texas.

### IV. FACTS AND ALLEGATIONS

12. On 17 December 2021, DEBORAH JOHNSON had her constitutional rights violated when she was violently slammed against the bed of her pickup truck incident to a minor traffic misunderstanding which took place in the pickup line of her granddaughter's school.
13. Mrs. Johnson, previously a committed public servant, has the distinct honor of being the first African-American female firefighter in the history of the Corpus Christi Fire Department. In 2022, KRIS 6 News chronicled Mrs. Johnson's story for their *Coastal Bend Black Excellence* series (*Available at:* https://www.kristv.com/news/local-news/first-black-female-fire-fighter-paramedic-speaks-of-her-time-in-corpus-christi), as did the City of Corpus Christi,

3

calling her a "pioneer" in a tribute uploaded to YouTube (*Available at:* https://www.youtube.com/watch?v=9rEFaUW0qkE).









(ILLUSTRATIONS A-E)

14. Years after retiring, Mrs. Johnson, 71, is still serving the community, previously working as a volunteer with special needs children at the now-closed Meadowbrook Elementary School.

### **<u>EXCESSIVELY SLAMMED AGAINST THE BED OF HER PICKUP TRUCK IN THE PICKUP LINE OF HER GRANDDAUGHTER'S SCHOOL</u>**

15. On 17 December 2021, Defendant Martinez was working traffic at the School of Science and Technology (SST) Bayshore Campus on Airline Rd. in Corpus Christi when he ultimately used excessive force against Mrs. Johnson.

16. The incident was recorded on cell phone video by private citizens in the area and posted to Facebook by the *Corpus Christi Cronica*, on information and belief, a privately-run and owned "news and media" site which posts current events and notable events occurring in Corpus Christi, the surrounding area, and around the United States.



(ILLUSTRATION F)

17. As purported witnesses to this event indicated in their comments on the *Cronica* post, on information and belief, some drivers were confused by precisely where traffic was flowing, with some being confused by Defendant Martinez's traffic direction.



(ILLUSTRATIONS G-K)

18. Mrs. Johnson, having previously directed traffic as a firefighter, was confused by Defendant Martinez's instructions, so she asked him for clarity after rolling her window down, in response to which he was incredibly rude and condescending.
19. Thereafter, Mrs. Johnson pulled over — out of the flow of traffic — and exited her vehicle with the intent of writing down Defendant Martinez's information to complain about how he had treated her.
20. Rather than allow Mrs. Johnson to record his information on her organizer/calendar, Defendant Martinez chose to snatch the organizer from Mrs. Johnson's hands and throw it into the bed of her truck.



(ILLUSTRATION L)

21. Following this extraordinarily disrespectful and unnecessary act, Defendant Martinez then began asking Mrs. Johnson for her driver's license and berating her, at which point she called 911 to request assistance.

22. Mrs. Johnson asked the 911 dispatcher to send a police officer to her location. Defendant Martinez replies that the dispatcher does not need to send an officer, saying, on information and belief, "You don't need to send PD. I got it."
23. Defendant Martinez then demands Mrs. Johnson provide him her drivers license, reaching into her truck and, on information and belief, attempting to reach into her purse where the license was located.


(ILLUSTRATION M)

24. During such time, Defendant Martinez used foul language and began putting his hands on her, which escalated to him slamming her up against the bed of her truck and using extreme and excessive force in his attempts to subdue her for having committed a non-existent crime.



(ILLUSTRATIONS N-O)

25. At one point in the encounter, Mrs. Johnson mentions that he asked her for her license, at which point Defendant Martinez angrily replies, "You're on the phone, talking to the fucking police!" Defendant Martinez also threatens to tase Mrs. Johnson during the encounter.

26. Mrs. Johnson was ultimately taken into custody, but released on scene, and subsequently charged with a Class C traffic offense for failure to use her turn signal, hardly justifying the force used upon her.

27. In response to this post by the *Cronica*, at least two commentators alleged to have had other tense encounters with Defendant Martinez in the same traffic control context as this incident, including one who claimed to have seen an incident the day before the Defendant's encounter with Mrs. Johnson:



(ILLUSTRATIONS P-R)

## V.
## CAUSES OF ACTION

**COUNT ONE**
**EXCESSIVE FORCE**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendant Martinez**

28. Mrs. Johnson repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.
29. Defendant Martinez, acting under color of law, deprived Mrs. Johnson of the rights and privileges secured her by the Fourth Amendment to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.
30. Accordingly, Mrs. Johnson commences this action pursuant to 42 U.S.C. § 1983.
31. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive

to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

32. Mrs. Johnson was unquestionably injured by her brutal and violent slamming against the bed of her pickup truck during the encounter with Defendant Martinez. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant Martinez —] takes his victim as he finds [her]." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).

33. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

34. Mrs. Johnson's injuries resulted directly and only from a use of force that was excessive to the need of force, to wit: being slammed against the bed of her pickup truck when she had not struck Defendant Martinez, was not posing any threat to Defendant Martinez; and was *visibly and obviously* unarmed.

35. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

36. An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018).

37. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*
38. Mrs. Johnson was not actively, passively, or otherwise resisting arrest when Defendant Martinez's application of force began.
39. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

   a. *Severity of the crime;*

   b. *Immediate threat;* and

   c. Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing.* *Graham v. Connor,* 490 U.S. 386, 396 (1989).

40. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).
41. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).
42. Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).
43. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors is satisfied in favor of Defendant Martinez.
44. At the point Defendant Martinez slammed Mrs. Johnson against her truck, she was not attacking or assaulting him, and had obviously *not* struck him, as is crystal clear on the cell phone camera footage. Even when she began arguably resisting him, he was **significantly** taller and heavier than Mrs. Johnson, vitiating against the notion that she posed a significant threat to his safety. At worst, Mrs. Johnson had committed a Class C offense at the time Defendant Martinez began using force against her.
45. Consequently, no force **whatsoever** was justified by Defendant Martinez.
46. The other two factors, however, also weigh heavily against Defendant Martinez.

47. Mrs. Johnson was not an immediate threat, as any alleged threat she posed was no greater than anyone else with whom an officer might make contact during a traffic encounter. She took no steps towards Defendant and was *clearly* unarmed.

48. Mrs. Johnson was also not actively or passively resisting Defendant Martinez at the time he began using force against her or attempting to flee or evade arrest. She was standing in front of the door to her pickup when Defendant Martinez forcefully began grabbing her to detain her. She was most certainly not attempting to flee either.

49. The fact that *no* alleged crime had been committed at that point or even suspected and that Mrs. Johnson was standing still, makes it clear that Defendant's belief that force was needed and the accompanying use of force were completely unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have known that suddenly resorting to physical force as [Defendant Martinez] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

50. The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

51. Mrs. Johnson suffered physical injury, pain, mental anguish, as a direct result of the excessive force used against her.

52. Defendant Martinez caused Mrs. Johnson to endure pain and suffering by slamming her against her truck.

53. These injuries were only caused by this forceful slamming and not by any other means.

## **Qualified Immunity under § 1983**

54. County Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:
    a.  The individual's acts deprived the party of constitutional rights under color of law;
    b.  The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

55. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation of the Fourth Amendment right against unreasonable searches and seizures, because Mrs. Johnson was not actively engaged in the commission of a crime at the beginning of the encounter culminating in her forceful slamming against the bed of her pickup truck.

56. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the *quickness* with which law enforcement personnel have escalated from negotiation to force." *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016)(emphasis added). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, if necessary — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748.

57. No reasonable official could have believed that slamming Mrs. Johnson, an elderly woman, against her truck was appropriate. "Any reasonable officer should have realized that [such actions] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

58. The acts of Defendant were unreasonable under the circumstances when viewed objectively.

59. Defendant was deliberately indifferent to the excessive risk of harm to Mrs. Johnson in the actions he took. Such acts deprived Mrs. Johnson of and violated her clearly established constitutional rights and were not objectively reasonable.

60. The acts of Defendant clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mrs. Johnson's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that their actions were violative of such rights.

61. The acts of Defendant were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as violently slamming an elderly woman against the bed of her pickup truck. Thus, Defendant is liable

to Plaintiff for the damages caused by his actions, which were the direct and proximate causes of Mrs. Johnson's injuries.

## COUNT TWO
## <u>Fourth Amendment § 1983 *Monell* Claim against Nueces County, Texas</u>

62. Mrs. Johnson incorporates by reference all of the foregoing and further alleges the following:
63. The conduct of Defendant Martinez constituted unlawful, unreasonable excessive force.
64. At all material times, Defendant Martinez acted under color of state law, as an agent of Nueces County, Texas.
65. Defendant Martinez was acting within the course and scope of his duties as a Nueces County Constable Precinct 1 deputy when he slammed Mrs. Johnson against the bed of her pickup. At all times relevant to this lawsuit, Defendant Martinez was clad in his Nueces County Constable Precinct 1-issued uniform.
66. Precinct 1 Constable Robert M. Cisneros is the Defendant's policymaker for all matters related to the Nueces County Constable Precinct 1, having been delegated the policymaking authority by the Nueces County Commissioners Court.
67. Consequently, Nueces County had or ratified the following policies, customs, and/or practices in place when Defendant slammed Mrs. Johnson against her pickup:
    A.    Overlooking the unjustifiable uses of force by Defendant Martinez
68. Unfortunately, this is not the only situation wherein Defendant Martinez has used grossly excessive force against a citizen of Nueces County.
69. On October 21, 2018, Defendant Martinez and other officers arrested a man with the initials J.G. for public intoxication, *in front of his apartment complex.*
70. Defendant Martinez and the others transported Mr. Griffith to the RTA bus station on Leopard St., where Defendant Martinez proceeded to antagonize J.G., alleging that J.G. was kicking him.
71. This alleged assault against Defendant Martinez was clearly controverted by the body camera footage.
72. Deputy Martinez ultimately tased J.G. for no reason.
73. The Nueces County District Attorney's Office dismissed the pending Assault on a Public Servant case against J.G. in May 2022.
74. Nueces County Constable Precinct 1 command staff presumably reviewed this and other uses of force and found no issue, as Defendant Martinez was still employed and utilizing County property during the off-duty shift that is the subject of the instant cause of action.
75. Nueces County approved and encouraged such conduct.

76. Defendant Martinez, one of Constable Cisneros' subordinates, violated Mrs. Johnson's constitutional rights when Constable Cisneros failed to supervise him by encouraging/overlooking the use of excessive force, which coalesced to cause the divestiture of Ms. Leal's constitutional rights.
77. Constable Cisneros and his command staff were all deliberately indifferent to the natural byproducts of this policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring further civilians were not hurt by Defendant Martinez.
78. Constable Cisneros was actually aware of facts from which any reasonable policymaker could draw the inference that a substantial risk of serious harm and violation of constitutional rights existed, and actually drew that inference.
79. Constable Cisneros was aware of at least one similar incident occurring before Mrs. Johnson's slamming, although it was clear that a constitutional violation was a very likely outcome of the Defendant Martinez's propensity to use force.
80. Constable Cisneros and his command staff knew or should have known that failing to discipline Defendant Martinez and discourage his use of force, would cause the violation of the constitutional rights of Nueces County residents and others with the unfortunate luck of crossing paths with Defendant Martinez.
81. The previously mentioned policy were a moving force of Ms. Leal's constitutional deprivations and injuries, causing her to experience physical and mental injury and suffer damages.

## VIII.
## <u>DAMAGES</u>

82. Mrs. Johnson repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.
83. Plaintiff seeks monetary relief and for judgment of all the other relief to which she deems herself entitled.
84. Mrs. Johnson's injuries were foreseeable and directly and proximately caused by the excessive force used against her.
85. As a direct and proximate result of the occurrence underlying this lawsuit, Mrs. Johnson suffered:

a. Physical injuries, including impairment;
b. Physical pain and suffering;
c. Deprivations of her liberty;
d. Permanent physical disfigurement;
    e. Emotional distress, torment, and mental anguish; and

17

f. Reasonable and necessary medical care to treat her injury in the past and future.

86. Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of punitive damages, pursuant to 42 U.S.C. § 1983 and § 1988.

# IX.
## ATTORNEY'S FEES

87. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

# X.
## JURY DEMAND

88. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:   (361) 887-1031
Facsimile:     (361) 887-0903


__*/s/ Matthew S. Manning* _____
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
matt@wcctxlaw.com

**\* E-Service Email: <service@wcctxlaw.com>**
**\* E-Service is only accepted at the above designated e-service e-mail address.**

ATTORNEY FOR DEBORAH JOHNSON